Travis E. Lynch (CA 335684)
  lynch@rhmtrial.com
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Ave. NE, Suite 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866

*Attorneys for Plaintiff Illumidine, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ILLUMIDINE, INC., <br><br> Plaintiff, <br><br> v. <br><br> HESTAN SMART COOKING, INC. and MEYER CORPORATION, U.S., <br><br> Defendants. | Case No. <u>8:25-cv-00328</u> <br><br> **COMPLAINT FOR PATENT INFRINGEMENT AGAINST HESTAN SMART COOKING, INC. AND MEYER CORP, U.S.** <br><br> **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Illumidine, Inc. ("<u>Illumidine</u>" or "<u>Plaintiff</u>") files this Complaint for patent infringement against Defendants Hestan Smart Cooking, Inc. and Meyer Corporation, U.S. (collectively, "<u>Defendants</u>"), alleging, based on its own knowledge as to itself and its own action, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>"), issued by the United States Patent and Trademark Office ("<u>USPTO</u>"):

| U.S. Patent No. | Title | Available At: |
|---|---|---|
| 10,881,249 | Foodware System Having Visual-Stimulating, Sensing, Heating, And Wireless-Communication Components | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10881249<br><br>https://patentimages.storage.googleapis.com/94/74/08/bc1ca86655ab31/US10881249.pdf |
| 11,375,853 | Foodware System Having Visual-Stimulating, Sensing, Heating, And Wireless-Communication Components | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11375853<br><br>https://patentimages.storage.googleapis.com/a0/bd/13/ab455c4c5e1efc/US11375853.pdf |

2.     Illumidine seeks injunctive relief and monetary damages.

## PARTIES

3.     Illumidine is a corporation organized under the laws of the State of California since July 23, 2014, with its principal place of business at 601 Mystic Lane, Foster City, California 94404.

4.     Illumidine is the assignee of the Asserted Patents, with all rights to recover for all past, present, and future infringement, including past damages.

5.      Upon information and belief, Defendant Hestan Smart Cooking, Inc. ("Hestan") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1 Meyer Plaza, Vallejo, California 94590.

6.      On information and belief, Defendant Meyer Corporation, U.S. ("Meyer") is a United States corporation organized under the laws of the State of Delaware, with its principal place of business at 1 Meyer Plaza, Vallejo, California.

7.      On information and belief, Hestan may be served with process through its registered agent CSC - Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

8.      On information and belief, Meyer may be served with process through its registered agent CSC - Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

9.      On information and belief, Defendants are related entities that work in concert to design, manufacture, import, distribute, offer to sell, and/or sell devices that infringe the Asserted Patents.

## JURSDICTION AND VENUE

10.     Illumidine repeats and re-alleges the allegations in the Paragraphs above as though set forth in their entirety.

11.     This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284-85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over each Defendant because each Defendant, directly or through intermediaries, has committed acts within this District giving rise to this action and/or has established minimum contacts with this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.  In particular, each Defendant (i) has a regular and established place of business in the State of California and this District; (ii) has purposefully

availed itself of the rights and benefits of the laws of the State of California and this District; (iii) has done and is doing substantial business in the State of California and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of California and this District; (iv) has derived and derives substantial revenues from infringing acts occurring in the State of California and this District; (v) maintains continuous and systematic contacts in the State of California and this District; and/or (vi) places products alleged to be infringing in this Complaint in the stream of commerce with awareness that those products are sold, used, and offered for sale in the State of California and this District.

13.     Each Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in California, including in this District.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

15.     On information and belief, Defendants have maintained an established and regular place of business in this District and have committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).  *See* **Figure 1** and **Figure 2** below.



Here at Hestan, our passion is inventing the best kitchen products imaginable. That's why you'll find us — Hestan's cadre of chefs, scientists, engineers, and vintners — bustling away in the culinary labs at our Napa Valley vineyard, or crafting masterpieces at our state-of-the-art production facilities in sunny Southern California. Driven by our passion, we spend day and night creating revolutionary products and technologies that push the limits of what's possible in the kitchen.

**Figure 1.** Screenshot of https://meyerus.com/brands/hestan/

**Figure 2.** Screenshot of

https://www.instagram.com/hestanteam/p/CxOTHJTsIGQ/the-hestan-story-starts-here-in-anaheim-ca-from-the-design-to-production-commerc/

16.      Defendants are subject to this Court's specific and general jurisdiction under due process and/or the California Long Arm Statute due at least to Defendants' substantial business in this judicial district, including (i) at least a portion of the

infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in California and in this District.

17.    Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, and offer their services and products, including those accused of infringement, to customers and potential customers located in California, including in the Central District of California.

18.    Defendants maintain a regular and established place of business in this District, including but not limited to a facility at the following address: 3375 E La Palma Avenue, Anaheim, California 92806.  *See* <u>Figure 1</u> and <u>Figure</u> 2 *supra*.

19.    Defendants also sell, offer for sale, and/or advertise the Accused Products through specific approved third-party retailers.  Several such retailers are located in this District.  *See* **Figure 3** below.

Store Locator



**Figure 3.**  Screenshot of <u>https://hestanculinary.com/pages/store-locator</u>

20.    Defendants commit acts of infringement from this District, including, but not limited to, the sale, offer for sale, and/or advertisement of the Accused Products and inducement of third parties to use the Accused Products.

## ILLUMIDINE'S DEVELOPMENT OF THE PATENTED ACTIVE FOODWARE SYSTEM

21.    Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.    The founder and Chief Executive Officer of Illumidine is James Kramer, Ph.D. ("Dr. Kramer").

23.    Dr. Kramer has a Bachelor's degree in mechanical engineering from the University of Arizona, and a Master's Degree and Ph.D. in electrical engineering from Stanford University.  Dr. Kramer earned his Ph.D. from Standford University while focusing on smart-product design.

24.    In or about the fall of 2003, after the successful sale of a previous company that focused on hand-sensing gloves used with virtual reality systems, Dr. Kramer became interested in kitchen products and the idea of a "smart kitchen." His initial focus was on creating active dining and cookware products, including a smart plate.

25.    On or about October 22, 2004, Dr. Kramer filed his first patent application, Application No. 10/904,103, for an active foodware system.  From 2004 through 2013, while also focusing on other business ventures, Dr. Kramer continued to pursue new patents for his active foodware system.

26.     In or about July 2014, Dr. Kramer incorporated Illumidine.  Dr. Kramer also continued developing smart-plate prototypes.  For example, one 2017 prototype included separate dining surfaces for food.  Each dining surface had a corresponding load cell underneath it to measure the food.  This information was then relayed to a custom microprocessor module, which controlled the device.



**Figure 4**.  Photograph of 2017 Prototype

27.     Dr. Kramer also continued to pursue additional patents that further protected his active foodware systems.

28.     In or about October 2017, Dr. Kramer attended the Smart Kitchen Summit in Seattle, Washington.  The Smart Kitchen Summit is the leading event and community focused on the future of food, cooking, and the kitchen.  It brings together the world's innovators across the home appliance, culinary, grocery, smart-home/Internet of Things, and technology industries to explore and create the future together.

29.     Participation in the Smart Kitchen Summit motivated Dr. Kramer to share his active foodware system with like-minded individuals, and Dr. Kramer spent the next year readying a prototype smart plate, known as SmartDish®, for demonstration at the 2018 Smart Kitchen Summit.

30.    As part of these preparations, Dr. Kramer continued to pursue patents that further covered his smart dining and cookware products.  For example, on or about September 27, 2018, Dr. Kramer filed Application No. 16/144,938, which eventually issued as U.S. Patent No. 10,881,249 (the "'249 patent").

31.    In or about October 2018, Dr. Kramer attended the Smart Kitchen Summit, again in Seattle, Washington.  This time, he rented a booth, and he demonstrated his prototype smart plate to hundreds of people over the course of the conference.

32.    Dr. Kramer also demonstrated his prototype smart plate at the 2019 Consumer Electronics Show in Las Vegas, Nevada in or about January 2019.  He demonstrated his prototype smart plate to thousands of people over the course of the two-day conference, and more than 200 interested people signed up for his mailing list.

33.    Given the public's interest in Dr. Kramer's invention at the trade shows he attended, Dr. Kramer has spent years further developing his inventions and obtaining quotes to mass manufacture his product and working to secure funding to do so.

34.    Dr. Kramer has also spent years further pursuing additional patents to protect his smart dining and cookware products.  For example, on or about January 4, 2021, Dr. Kramer filed Application No. 17/140,795, which eventually issued as U.S. Patent No. 11,375,853 (the "'853 patent").

## THE ACCUSED PRODUCTS

35.    Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36.    Based upon public information, Defendants sell, offer for sale, and/or advertise induction Bluetooth and WiFi-enabled cooktops and cooking systems

under their various brands, including but not limited to, the following exemplary products:

    a. **Hestan Smart Electric Induction Cooktop** (KICS36 and KICS30);

    b. **Hestan Cue Smart Induction Burner** (41000);

    c. **Hestan Cue Smart Cooking System**, including the Hestan Smart Fry Pan (31516) and Hestan Smart Capsules (31519 and 31500); and

    d. **Hestan SmartChef Cookware**, including the Hestan Smart Sauce Pot (AKST3), Hestan Smart Chef's Pot (AKST5), and Hestan Smart Pan (AKSP11).

37.    Defendants instruct end users to use the hardware, software, and functionality that allows users to use the Bluetooth and WiFi-enabled cooktops, including, but not limited to, the model numbers and SKU numbers listed above and the Hestan Cue application for mobile phones and tablets ("Hestan Cue App") (collectively, the "Accused Products"). *See, e.g.*, **Figure 5** and **Figure –6** below.




**Figure 5.** HESTAN, https://hestancommercial.com/product/36-smart-induction-cooktop/



Figure 6. HESTAN, https://hestancue.com/.

38.     In general, the Accused Products include a mechanical structure that is wider than it is tall.  *See, e.g.,* Figure 5 and Figure 6 *supra*; *see also* **Exhibit A** (Installation Manual) at p. 5 (providing dimensions for Hestan Smart Induction Cooktop KICS Series); **Exhibit B** (Product and Systems Guide) at p. 1 (providing dimensions for Hestan Cue Smart Induction Burner (41000).  This structure includes an inductive coil for providing inductive electrical power, acting as a heating component to cook food and drinks.  *See, e.g.,* **Figure 7** below.

## HOW INDUCTION HEATING WORKS

### INDUCTION

Heating by induction is the most efficient form of cooking available.

The heat is generated by an electromagnetic field, directly on the bottom of the cookware used.

The surface, unless cookware is on it, remains virtually cold.

When the cooking time is up and the container is removed, there is little residual heat.  It is efficient because there is no waste of energy due to dispersion, as happens with gas burners, it is 30 to 50% faster than cooktops using combustion burners and allows substantial energy savings.

If liquid overflows from the container, it is less likely to stick to the surface of the cooktop, because this is just slightly warm.

### OPERATING PRINCIPLE

This is based on the electromagnetic properties of most cookware.

The electronic circuit supplies power to the coil (inductor), creating a magnetic field, which heats the cookware.

As the cookware is heated, it heats the food.

Benefits include:

• High performance; the power goes into heating the food rather than heating the kitchen.

• Safety - removing the cookware (simply lifting it) automatically stops power to that cooking zone.

• Precision and flexibility through electronic control.

```
1 - Cookware
2 - Induced current
3 - Magnetic field
4 - Inductor
5 - Electronic circuit
6 - Electricity supply
```

**Figure 7.  Exhibit C** (Hestan Cue Smart Induction Cooktop KICS Series Use & Care Manual) at p 9.

39.     The Accused Products also include a sensing component for controlling the heating component (*i.e.*, inductive coil) in order to maintain a desired temperature.  *See, e.g.*, **Figure 7** *supra*; **Figure 8, Figure 9,** and **Figure 10** below; **Exhibit D** (Smart Induction Cooktop Specs) at p. 1.



**Figure 8.** <u>Exhibit C</u> (Hestan Cue Smart Induction Cooktop KICS Series Use & Care Manual) at p. 10.

40.    In addition, Defendants advertise that "[w]hen paired with patented cookware and the app, the smart induction burner maintains the perfect temperature as chef-guided videos walk you through each step and technique of our carefully developed recipes."    HESTAN, https://hestancommercial.com/product/36-smart-induction-cooktop/.

**Figure 9.**  Exhibit C (Hestan Cue Smart Induction Cooktop KICS Series Use & Care Manual) at p 18.

What is the Hestan Cue Smart Cooking System?
Hestan Cue creates a seamless cooking experience. Our smart cookware, induction burner and recipe app all communicate with each other to work in unison with you. Hestan Cue connects you to your cooking though Bluetooth® technology and embedded culinary sensors — adjusting the cooking temperature as you proceed through each recipe. Try new dishes. Learn new skills. Elevate your cooking without fear of overcooking — or underwhelming. Cue doesn't cook for you. It helps you become a better cook.

**Figure 10.** <u>Exhibit B</u> (Hestan Cue Product and System Guide (Induction Burner 41000 & Fry Pan 31516)) at p. 3.

41.    Because induction cooktops rely on electromagnetic energy to create heat, they can only be used with induction-compatible cookware.    Indeed, Defendants inform their customers that the "[Smart Induction Cooktop] will detect suitable cookware in any of the cooking zones" and "will only apply power to a cooking zone where cookware is detected." <u>Exhibit C</u> (Hestan Cue Smart Induction Cooktop (KICS Series) Use & Care Manual) at p. 10.  Defendants further explain that the "[Hestan Cue] Burner will not heat until cookware is placed on burner." <u>Exhibit B</u> (Hestan Cue Product and System Guide (Induction Burner 41000 & Fry Pan 31516)) at p. 11.  Furthermore, Defendants provide a free induction cookware set with any induction cooktop or burner.

42.    The Accused Products also include a visual display that provides visual stimulation in response to the data from the sensing component. *See* <u>Figure 5</u> and <u>Figure 6</u>, *supra*.

43.    The Accused Products also include Bluetooth and Wi-Fi connectivity for sending and receiving data from smartphones running the Hestan Cue App. *See* **Figure 11** below; *see also* <u>Figure 10</u> *supra*.  The Hestan Cue App provides real-time information regarding the temperature of the various burners. *Id.*

**Figure 11.** <u>Exhibit C</u> (Hestan Cue Smart Induction Cooktop KICS Series Use & Care Manual) at p 20.

44.    The Hestan Cue App also offers a database of recipes to choose from. Using the information in the Hestan Cue App, users can choose which food they would like to cook and have the Hestan Cue App turn on the Accused Products according to preset conditions.    *See* <u>Exhibit B</u> (Hestan Cue Product and System Guide) at p. 9 ("Choose from over 100 original, step-by-step video guided recipes. Each recipe has been created by Hestan development chefs specifically for the Cue. Recipes will lead you through prep, cooking, and plating to ensure you have a great meal every time.").

45.    Defendants have been on notice of Illumidine technology of the '249 patent since at least on or about June 21, 2021, by virtue of correspondence sent *via* registered mail to Defendants describing the '249 patent.  Defendants have also been on notice of Illumidine technology of the '853 patent since at least on or about October 12, 2022, by virtue of correspondence sent *via* email to Defendants

describing the Asserted Patents.  These correspondences are individually and collectively referred to herein as the "Illumidine Notice(s)."

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,881,249**

46.     Illumidine repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47.     The USPTO duly issued the '249 patent on January 5, 2021, after a full and fair examination of Application No. 16/144,938, which was filed on September 27, 2018, and claims priority to an application filed on October 22, 2004.

48.     Illumidine is the assignee of the '249 patent with all substantial rights, and interest in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers, and to collect damages for all relevant times.

49.     Illumidine or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

50.     The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for an active foodware system.

51.     The written description of the '249 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '249 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

52.     Defendants have infringed one or more claims of the '249 patent by using, providing, supplying, or distributing the Accused Products.

53.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '249 patent, as detailed in the preliminary and exemplary claim chart attached as **Exhibit E** hereto, which is incorporated by reference herein.

54.     For example, the Accused Products provide an active foodware system comprising a mechanical structure being wider than tall and including a wireless sending component for sending; a food surface supported by said mechanical structure, said food surface having a peripheral region surrounding said food surface, said food surface being recessed in relation to said peripheral region for receiving solid food and preventing spillage from said food surface; a heating component for heating said food; a sensing component for controlling said heating component for maintaining a desired temperature; a wireless communication component for communicating data related to said desired temperature, data from said sensing component, digital data related to said food, or electrical power; and a visual stimulating component for providing visual stimulation in response to said data from said sensing component or data from said wireless communication component.

55.     Since at least the time of receiving the Illumidine Notice in June of 2021, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '249 patent by inducing others to directly infringe one or more claims of the '249 patent.  Defendants have induced and continues to induce its subsidiaries, parents, partners, affiliates, contractors, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '249 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use

the Accused Products in a manner that infringes one or more claims of the '249 patent, including, for example, claim 1 of the '249 patent. Such steps by Defendant include, among other things, advising or directing subsidiaries, parents, partners, affiliates, contractors, employees, customers or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '249 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '249 patent. Defendants' inducement is ongoing.

56.   Since at least the time of receiving the Illumidine Notice in June of 2021, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '249 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '249 patent by subsidiaries, parents, partners, affiliates, contractors, employees, customers, and other end-users. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '249 patent, including, for example, claim 1 of the '249 patent. The special features include, for example, the system recited in claim 1. The special features constitute a material part of the invention of one or more of the claims of the '249 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

57.   Defendants have had knowledge of the '249 patent since at least the time it received the Illumidine Notice in June of 2021.

58.     Furthermore, on information and belief, Defendants have a practice of not reviewing the patents of others (including instructing its employees not to review the patents of others), and thus has been willfully blind of Illumidine's patent rights.

59.     Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

60.     Since at least the time of receiving the Illumidine Notice in June of 2021, Defendants' indirect infringement of one or more claims of the '249 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Illumidine's rights under the patent.

61.     Illumidine has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Illumidine in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

62.     Illumidine has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Illumidine has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '249 patent.  Defendants' actions have interfered with and will continue to interfere with Illumidine's ability to license its technology.  The balance of hardships favors Illumidine's ability to commercialize its own ideas and technology.  The public interest in allowing Illumidine to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 11,375,853</u>

63.     Illumidine repeats and re-alleges the allegations in Paragraphs 1–45 above as though fully set forth in their entirety.

64.     The USPTO duly issued the '853 patent on July 5, 2022, after a full and fair examination of Application No. 17/140,795, which was filed on January 4, 2021, and claims priority to an application filed on October 22, 2004.  A Certificate of Correction was issued on October 24, 2023.

65.     Illumidine is the assignee of the '853 patent with all substantial rights, and interest in and to the '853 patent, including the sole and exclusive right to prosecute this action and enforce the '853 patent against infringers, and to collect damages for all relevant times.

66.     Illumidine or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '853 patent.

67.     The claims of the '853 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for an active foodware system.

68.     The written description of the '853 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date.  The '853 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

69.     Defendants have infringed one or more claims of the '853 patent by using, providing, supplying, or distributing the Accused Products.

70.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '853 patent, as detailed in the preliminary and

exemplary claim chart attached as **Exhibit F** hereto, which is incorporated by reference herein.

71.     For example, the Accused Products provide an active foodware system comprising a mechanical structure; a food surface supported by said mechanical structure, said food surface having a peripheral region surrounding said food surface, said food surface being recessed in relation to said peripheral region for receiving solid food and preventing spillage from said food surface; a heating component for heating said food; and a wireless communication component for wirelessly sending data; wherein said mechanical structure includes said wireless communication component.

72.     Since at least the time of receiving the Illumidine Notice in October of 2022, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '853 patent by inducing others to directly infringe one or more claims of the '853 patent.  Defendants have induced and continue to induce its subsidiaries, parents, partners, affiliates, contractors, employees, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '853 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '853 patent, including, for example, claim 1 of the '853 patent.  Such steps by Defendant include, among other things, advising or directing subsidiaries, parents, partners, affiliates, contractors, employees, customers or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '853

patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '853 patent. Defendants' inducement is ongoing.

73.    Since at least the time of receiving the Illumidine Notice in October of 2022, Defendants have also indirectly infringed and continue to indirectly infringe by contributing to the infringement of one or more claims of the '853 patent. Defendants have contributed and continue to contribute to the direct infringement of one or more claims of the '853 patent by subsidiaries, parents, partners, affiliates, contractors, employees, customers, and other end-users. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '853 patent, including, for example, claim 1 of the '853 patent. The special features include, for example, the system recited in claim 1. The special features constitute a material part of the invention of one or more of the claims of the '853 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

74.    Defendants have had knowledge of the '853 patent since at least the time it received the Illumidine Notice in October of 2022.

75.    Furthermore, on information and belief, Defendants have a practice of not reviewing the patents of others (including instructing its employees not to review the patents of others), and thus have been willfully blind of Illumidine's patent rights.

76.    Defendants' actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

77.    Since at least the time of receiving the Illumidine Notice in October of 2022, Defendants' indirect infringement of one or more claims of the '853 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Illumidine's rights under the patent.

78.    Illumidine has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Illumidine in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

79.    Illumidine has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Illumidine has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '853 patent.  Defendants' actions have interfered with and will continue to interfere with Illumidine's ability to license its technology.  The balance of hardships favors Illumidine's ability to commercialize its own ideas and technology.  The public interest in allowing Illumidine to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

80.    Illumidine hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

81.    WHEREFORE, Illumidine requests that the Court find in its favor and against Defendant, and that the Court grant Illumidine the following relief:

a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches,

subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents;

c.    Judgment that Defendant account for and pay to Illumidine all damages to and costs incurred by Illumidine because of Defendants' infringing activities and other conduct complained of herein;

d.    Judgment that Defendants' infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages causes by Defendants' infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award Illumidine its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

//

Dated: February 19, 2025

Respectfully submitted,

By: */s/ Travis E. Lynch*

Travis E. Lynch (CA 335684)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue Northeast, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862
Email: lynch@rhmtrial.com

Jonathan Hardt
*pro hac vice* forthcoming
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for Plaintiff ILLUMIDINE, INC.**

**Exhibit List**

A.   Hestan Smart Induction Cooktop KICS Series Installation Manual

B.   Hestan Cue Smart Induction Burner (41000) Product and Systems Guide

C.   Hestan Cue Smart Induction Cooktop KICS Series Use & Care Manual

D.   Smart Induction Cooktop Specifications

E.   Evidence of Use Regarding U.S. Patent No. 10,881,249

F.   Evidence of Use Regarding U.S. Patent No. 11,375,853